Good morning, Your Honors. May it please the Court. My name is Karen Hanks and I represent SFR in this matter. Can you pull the microphone up a little closer? It's the same problem as the prior. Just so the recording captures your voice as well. Understood. The District Court's decision, Your Honors, cannot be squared with the law. The only way for this Court to move forward is to reverse because the District Court did not follow the law. We know the super priority amount is defined as the nine months of assessments, quote. This ultimately seems to come down to a factual issue of whether or not any portion of the amount that was the subject of the foreclosure was a portion of the super priority. That is true. And what was your factual showing that there actually was, as part of the whole process of forfeiture, an amount in there that was super priority? Two facts, Your Honor. The first fact is using the actual document that instituted the proceedings, right? We have the definition of the document that institutes the enforcement of the action. So which document is that? The January 5th, 2009 letter. That is the Notice of Delinquent Assessment. It's not the Notice of Lien or the Notice of Default? No. So that's where, it's not the Notice of Default and it's not the Notice of Lien. So we know from the NRS 116, the definition of that nine month is the institution of action to enforce the lien. The Nevada Supreme Court in the Sadaquoi Bay v. Great Eagles said the Notice of Delinquent Assessment Lien is that document that institutes the action. The Notice of Delinquent Assessment Lien is on January 5th, 2009 because a Notice of Delinquent Assessment Lien can only include, you can only foreclose on unpaid periodic assessments, late fees and interest. You cannot foreclose on fines only. So the Notice of Lien of the January 8th, excuse me, June 18th, 2007 was a fine-only notice at least according to... I know, but the problem was when you get to the Notice of Foreclosure Sale and the actual foreclosure deed, you don't reference back to any 2009 letter, but it's referenced back to a delinquent assessment lien recorded on June 20th, 2007 and a Notice of Delinquent Assessment Lien recorded June 20th, 2007. So I mean, the foreclosure deed actually characterizes the 2007 document as being a Notice of Delinquent Assessment Lien, which I understand you say would bring it within Sadaquoi. Right. And so what Wells Fargo argued was that at the time of the June 18th, 2007 fine notice, it only contained fines. And we have some subsequent letters from the collection company that said it only contained fines. Well, you cannot foreclose on a fine-only lien. But irrespective of that... But the reference 2007, June 20th, 2007 Notice of Lien is for 1920, which is an all and it's all fines. Correct. And you can't foreclose on only fines. That's why that cannot be the document. That's the document that's the lien referenced in the foreclosure sale. Right. But that's only because if... Did you just... Well... Did somebody just make a mistake and not put in the right Notice of Delinquent Assessment? They referenced the 2007. In your view, they should have referenced 2009? Actually, they didn't have to reference anything. So that's really a mistake in terms of nothing in the statutes require that the HOA references the Notice of Delinquent Assessment. So neither the NOD has to do that or the NOS. I surmise. The reason they did it is that you cannot foreclose on fines only. So by the time that they were pursuing the Notice of Default, it dates back to the January 5th, 2009 Notice of Delinquent Assessment lien. So to capture those fines, because they would otherwise not be foreclosable on their own, they incorporated that notice within the Notice of Default. But that's what I surmise. Counsel, my understanding of Silver State allows an HOA to initiate foreclosure process on a sub-priority component only so long as the ultimate foreclosure cell includes costs more than just fines. Am I wrong? No. What that's saying is that the statute requires that an HOA cannot foreclose on a lien that's comprised of fines only. Only, yes. But late fees, interest, other costs, those are foreclosable just like your unpaid periodic assessments. So that's why Silver State doesn't really help Wells Fargo here because that case did have a Notice of Delinquent Assessment lien, an N-O-D-A-L, and it included assessments that could be foreclosed upon. The notice of lien here could not possibly be an N-O-D-A-L because it only contained fines. Potentially, because that's what they say and that's what subsequent letters say. But to that effect, if this Court even wants to treat the 2007 fine notice as the document that instituted the foreclosure, we presented evidence that the HOA ledger showed that there was an unpaid assessment of $132 on June 1, 2007. So getting back to your question, Your Honor, at the very beginning of this argument, no matter how you slice it, there was a periodic assessment that existed in June of 2007 that carries the priority status. Is that enough to show us that that assessment was delinquent or just due? That's all that's required. It's only any assessments that's due. It's nine months of periodic assessments that were due immediately preceding the institution. It doesn't have to be late. It doesn't have to be... As I understand your Johnstone question, there's a ledger that shows they're due and some of the documents have $132 and then there's a credit later. And then there's one that's due, but how do we know that there isn't a later credit for that? We have the records, Your Honor. The HOA records went through past June 1st and show that that was never credited. And then he... Here in the record is the evidence showing that it was never credited. Point me to that. ER-159 is that HOA ledger, Your Honor. So after that, I think it's dated June 7, 2007. And then I believe there's subsequent ledgers all the way... And I can get that if I have a moment to sit down. I'm looking at ER-159. And so I assume you're saying the last entry, the June 1st, 2007, that has 132. Correct. Is that what you're saying shows? Correct. And that was never... But how do we know that that was never paid? Because the May one has... You see a series for each month, 132 credit, 132, 132 credit, 132. And then we get to there and it's the last entry. So how do we know there aren't actually further facts or entries? I mean, did you put in someone who said there's nothing further?  I think we have more ledgers, Your Honor. I just printed that one off because this was printed on June 7, 2007. And this was part... But the notice, if it is to include that, is issued, what, a little more than a week after that. So wouldn't it have to be due and unpaid as of the time of the notice? As of the time of which notice? It was. That's what I'm saying. It was due and owing at the time of the NODAL in January 5, 2009. I didn't print the actual continuing ledgers, but we have ledgers going all the way through to the foreclosure. Would the notice of lien be effective as to unpaid assessments that accrued after it was  Or does it have to be one that was before it was filed? Well, the problem is this notice of lien doesn't have any impact on the foreclosure because you cannot foreclose on fines only. So if this notice of lien, which is what Wells Fargo argued, the June 2007, comprised of only fines, then it's superfluous whether... The notice of lien also says, you know, it says the total amount due as of today is $1,920, but it's got a little asterisk, and then the asterisk says additional monies will accrue under this claim at the rate of the claimant's regular monthly and or special assessments and or fines accruing, dot, dot, dot, accruing after the date of the notice. Yes. So that was my question is, are you asserting that this notice of lien is effective with respect to unpaid monthly assessments that accrue after the date of the notice? That is typically how it works.  So for it... So does Nevada law allow this kind of prospective notice of lien that here's a notice of lien and if this becomes, you know, unpaid after, it's effective as to that too? Yes. I mean, the HOAs do do that, and certainly that's what happens in the 2009 NODAL. As the homeowner continues to stop paying, the fact that the, what the amount was due in January 2009 is not the only amount they can foreclose. And did you introduce evidence that the larger multi-thousand dollar balance at the time of the actual foreclosure did include unpaid assessments? Yes. There's no... So I want to be clear. There's no dispute that there were unpaid periodic assessments, nine months total, that were due... Oh, absolutely. Yes. No one paid the super priority. This is not one of those cases where a bank tried to pay, a bank wanted to pay. Absolutely not. That is undisputed. Where Wells Fargo and the district court were arguing, because you do measure it, I'm going to, you know, I'm not going to hide that fact. You do measure it, according to the Supreme Court, from the document that institutes the action. That's why that's so important, that definition. And the point and the importance of that is it gets measured from the document that institutes the action, which is the N-O-D-A-L, which is the January 5th, 2009 document. If you measure nine months from the next... As I pointed out, the foreclosure document refers to this... I understand. I know this is captioned as notice of lien, but it refers to it as a notice of delinquent assessment lien. And Wells Fargo on page nine of the brief say that was a typographical error. But again, no matter how you slice it, if that's the case, then we do have an unpaid assessment of 132. And it only takes one. It doesn't even take the whole thing. I can have one cent of that exist. And that means a super priority exists at the time of the 2013 sale. So that's why I say, under the case law, the notice of lien could not possibly be the document that instituted the foreclosure proceedings, because it is not a document, at least what they say, did not comprise anything other than fines. What does the January letter mean by saying previously you were advised that NAS was collecting for violations only? Just to try to nail down the reference from 2009 to 2007. That's what I think. That's where we get this from. Because you can't tell from the notice of lien that it only has fines. You can't from its face. We only get that from the subsequent letter here, which is the NODAL of January 5th, 2009, where NAS says previously we were only collecting for violations only. And I think that's what they're referring to. They're referring to the June 2007 notice was a violations only, which you cannot foreclose on. And then now they are starting the foreclosure process by this January 5th, 2009. This is the notice of delinquent assessment lien. Now they're saying not only are we moving forward on the fines, we are also now moving forward on the periodic assessments, because now we can foreclose. And that's why, again, I surmise, although the statute does not require the HOA to reference the NODAL or the notice of lien in either the notice of default or the notice of sale, they referenced it so that it would be included in the foreclosure. Because we have the case law from the Nevada Supreme Court that a bank tried to argue in another case, this is the Shadow Canyon case, that because there were fines included in the lien, the HOA could not foreclose. And the bank, excuse me, the Supreme Court rejected that and said no, because there was fines and periodic assessments, it could foreclose. So that's why I surmise the HOA included, even though they didn't have to under the statutes, reference to this June 2007 lien, to make sure it was unequivocally clear that they're also including the fine lien, which they can now, because it's going to be. How does a plaintiff have a latches defense? I don't think it's a defense, Your Honor. I think it's a doctrine. And what we have here is we have questions about what the HOA ledgers mean, what was supposed to be included, why they included it, and because Wells Fargo waited nearly, I think it was 10 years to challenge the sale, they didn't even challenge it, they started their own nonjudicial foreclosure and forced my client to come into court with a quiet title action, these entities now cease to exist. At least the ideal community management who ultimately did the sale is defunct. So that's why I think I put in my briefing, I would have asked for 56F relief, but I could not do it because there was no one to talk to to explain these things. And at the minimum, though, we created the issue of fact that an assessment existed if you treat the 2007 lien as the document that instituted it under either scenario. Your Honor, I do just have a minute and 25. I'll give you time for rebuttal, but I've got a couple more questions before you sit down. Are there any requirements, you know, under Nevada law, notice-based, et cetera, that something be identified as a notice of delinquent assessment lien? Because, you know, this letter doesn't have any kind of heading or caption or sort of bells and whistles, warning, warning, you know, it just is, you owe us money if you'd like to make arrangements, and then some legalese. It doesn't look like a notice of delinquent assessment lien, and indeed, buried in all the verbiage that I assume is from the Debt Collection Act, it then says federal law does not require NAS to wait until the end of the 30-day period to record the capital N notice of delinquent assessment lien, all, you know, capital letters. Is that, the reader is supposed to think that that's referring to this document, and this document's going to be recorded? So there's no requirement that it be recorded. That's kind of the misnomer. I think Wells Fargo argued it, and it's just wrong. Happened. A lot of HOAs did do it, but it's not required. So the NRS, one wants to know- But how do I know that this is the notice of delinquent assessment lien, when it's not captioned that, and on its face, it seems to say that something else would be the notice of delinquent assessment lien? Because it just simply, two things. Because it can't be, unless it has unpaid periodic assessments, that's how we know it's what it is, because that's the only document that can institute a foreclosure. And two- I mean, what this sounds like is someone at some point realized the paperwork hadn't been done right, looked back, what can we say was the notice of delinquent assessment lien? We'll say this letter is, honest, that's what this looks like. I can assure you that's not what happened.  And the reason why I know that is NRS 116.30162 only requires that a letter be mailed. That's it. That's all that's required for a notice of delinquent assessment lien. There's no other requirement. It's right there in subsection 1A. You just send a letter and say you have to identify the address, identify the owner, and that there's unpaid periodic assessments. That might be a criticism of the statute- And that what, I mean, what makes it a notice of a lien, though? You have to- That. That's it. No, but just saying you owe money, you have to say that it ties to a lien. No, you don't, because under NRS 31164- Nevada has a notice of lien that doesn't mention liens. Correct, because the recordation of the CC&Rs is the lien. So that's why. That's 31164. And it says no further recordation of the claim of lien for assessment under this section is required. So essentially, our legislator said, HOA, you've recorded your CC&Rs, that is the lien. These letters are what institute the foreclosure proceeding. So you're looking at it, I understand, from a kind of- Why does the notice then refer back to the 2007 notice and not the 2009 that you're claiming is- Again, I'd be speculating, but the only reason that I think they did that is because the 2007 fine lien would not be foreclosable. It is not foreclosable. You cannot foreclose on fines only. So my understanding, or that's why I surmise, that the HOA included that so that now the parties knew, the homeowner knew, that not only are we moving forward on unpaid periodic assessments because now we can non-judicially foreclose, we're including the prior fines. But the not only part, but there is no reference in the notice to the 2009 letter that you think is operative. But there's no requirement. There's no requirement. 3116, it's 311621A, does not require, excuse me, I'm sorry, 311621B. The notice of default only has three requirements. Describe the deficiency, name and address of the person authorized to enforce the lien, and give a warning. It's all in caps. That's the only requirement of the notice of default. So the fact that the HOA are doing superfluous things and extra things, I'm asking the court not to read into that. You can't read into that. Your only question in this case is, what do I measure where superpriority exists? If you use the 2007 document, that can't be the document that started the foreclosure. So you have to measure it from the 2009 document.  All right. Thank you, counsel. I will give you two minutes for rebuttals. Thank you. I appreciate that, Your Honor. All right. So we will hear now from Ms. Winslow. Good morning, Your Honors. Push this back. Natalie Winslow of Atlas-Solomon for Wells Fargo Bank, the appellee. I think the critical question for this court to answer today is whether the HOA took any action to enforce its lien in 2007. And the reason why that's the critical question is because the superpriority lien amount is measured from either six or nine months preceding the, quote, institution of inaction to enforce the lien. For example, the Nevada Supreme Court in the SFR versus U.S. Bank decision in 2014 made clear that NRS 116 does not require an HOA to take any particular action to enforce its lien but only requires institution of inaction, which can include nonjudicial foreclosure. In fact, when the Nevada Supreme Court evaluated that language in 2014, it looked at what the definition of institution meant by reference to Black's Law Dictionary, and what it means is the commencement of something, such as a civil or criminal action. And what the HOA did in this case in 2007 when it sent the notice of lien to the homeowners and then recorded it against the property was the institution of inaction to enforce that lien. So now, but even assuming, Arguendo, that that's true, what do we do with the fact of this asterisk statement that it said here's a notice of a lien, you know, because the HOA has this notice of lien, and it said the amount due as of today is $19.20, which we know is all just fines. But then it says additional monies will accrue under this claim that's being recorded at the rate of the claimant's regular monthly and or special assessments accruing after the date of the notice. So if you end up with unpaid assessments, then those are included in this notice of lien. And then the notice of default has similar language. It cross-references back to the 2007 and says that it declares that a breach of the obligation for which the, you know, the lien has been recorded has occurred in that the payments have not been made of homeowners assessments due from April 1st, 2006, and all subsequent homeowners assessments, blah, blah, blah, plus fines, et cetera. So even if it is the 2007 document, why doesn't the language that I just walked through capture any unpaid assessments that would accrue by the time of foreclosure and make it effective as to those? You're absolutely right, Your Honor. It does. Okay. But then she, your opposing counsel said it's undisputed that at the time of the foreclosure, those accrued amounts did include unpaid monthly assessments that would be eligible for super priority. There were assessments that were due in owing, but what we need to look at is whether those assessments were entitled to super priority status. And there are only six to nine months of assessments that precede the institution of inaction to enforce the lien. So that would have predated the 2007 institution of the action that would be entitled to super priority status. Any subsequent assessments that became due in owing would have been a sub priority lien and would not, would have been part of this sub priority portion of the lien. Because the super priority only attaches to what? So the HOA has one lien. A portion of it can be super priority. And that portion is the six to nine months of assessments that predate the institution of inaction to enforce the lien. I see. So it, so even if others are accruing, they will in fact be part of the lien, but it's a sub priority because you, the super priority is six to nine months from the date of the institution, which would be in your view, this 2007. And therefore we get to this issue of was that June payment shown not to have been paid? That's exactly. And what does the record show about whether that $132 on which the ownership of this house determines? What does the record show as to whether that was unpaid? I think the record is very clear on this, your honor. And you can start by looking as the district court did at the notice of lien itself, which talks about the amounts that are due in owing as of the date the lien was executed. And what the notice of lien says is that the amount due in owing was $1,920, which we know and there's no dispute on, is comprised of fines, violations, and collection costs. That's point one. The second thing we can look at is the letter that accompanied the notice of lien that went to the homeowners that said, again, that the amount due as of the date the lien was recorded, and that would have been June 20th, 2007, the amount owed was that $1,920. The district court also looked at NAS's, the foreclosure trustee's ledger, which showed the total amount due that was going to be part of the lien as $1,920, the same amount. It also had on the NAS ledger a column for the total monthly assessments that were due. And the amount due was $0. Now, the only suggestion in the record that the $132 was owed as of the date the lien was recorded was an HOA ledger in the file. And what it says is, apply charges assessment $132 as of June 1st, 2007. Now, SFR interprets that ledger entry. We're looking at ER-159, this ledger that she had talked about. That's correct, Your Honor. And by the way, there are additional ledgers in the record that are closer to when the foreclosure occurred. Just to point out something that I think my colleague will talk about with the subsequent ledgers. The subsequent ledgers, if you look at them, start from 2012. They don't go back to 2007, 2009. I never get what was the next entry after the June 1st, to see whether or not there's a credit after it. Yeah, and I think the reason why, and this is, again, me just assuming, there was a bankruptcy that occurred. And there were payments that were made in the bankruptcy to the HOA. And when the bankruptcy ended, the HOA restarted foreclosure proceedings. And the ledgers at that point started in 2012, up until when the foreclosure occurred. Okay, and then when you were referring to, you know, the violations, the description of the 19-20, what document were you referring to that? And you said it showed no assessments due. So, the Notice of Lien is at Supplemental Excerpt of Record 105. The letter that went to the homeowner, I thought I had it written down here, but it's right there next to the lien in the record. And then the NAS ledger that the district court relied on is Supplemental Excerpt of Record 104.  So, getting back to the $132, there's even later suggestions in the file that the assessment was not doing owing. When you talk about the 2009 letter that SFR was discussing, that letter talks about the assessments that have now become delinquent. And because they have become delinquent, NAS has been advised to include those fees in ongoing collection efforts. So, there's no evidence in the record that there was $132 that was due an owing as of the date the lien was sent to the homeowners and recorded. We cited in our brief the Nevada Supreme Court unpublished decision Silver State, which I think talks about this case, talks about this issue rather well. And at footnote 2, in that case, there were not delinquent assessments that were owed at the time the foreclosure commenced. And what the Nevada Supreme Court observed at footnote 2, and this is the quote, as the district court observed, unless paid, assessments continue to accrue after an HOA records a notice of delinquent assessment lien. Here, however, there were no delinquent assessments at the time the HOA recorded and served its lien notice. And the record is very clear that the same is true here. The record is very clear that there were no delinquent assessments that were owed as of the date the notice of lien was generated, which was June 18th, or recorded, which was June 20th of 2007. Because there were no delinquent assessments as of that time period, the HOA, even if subsequent assessments became due an owing, they would have been, as Your Honor pointed out, part of the sub-priority portion of the lien. The HOA could foreclose on them, but it would not extinguish the senior deed of trust. I don't know if Your Honors have any other questions about the institution of inaction. I do have a few more comments to say about it, because I know SFR really advanced in its briefing that this 2009 letter was the institution of inaction to enforce the lien. But it doesn't make sense that the institution of inaction to enforce the lien, the action to enforce the lien, happened some two years after the lien was actually generated, since the homeowners are recorded against the property. The notice of default that was recorded against the property in 2009, and then the subsequent notice of sale, all reference the 2007 lien that was recorded against the property. And importantly, even the deed through which SFR took title, the foreclosure deed, references the lien that it is foreclosing upon is the 2007 lien. I can turn to Latches if Your Honors want me to turn there. This is a case where Wells Fargo never asserted any affirmative claim against SFR. Wells Fargo, consistent with the contractual terms of the deed of trust, initiated foreclosure prior to the maturity date of the deed of trust, once the deed of trust went into default. And it was only after Wells Fargo initiated foreclosure that SFR sued Wells Fargo. And Wells Fargo defended itself by saying that the foreclosure, the HOA foreclosure. I guess, you know, with how I understand and tell me if I'm wrong, the Latches argument is that, you know, it's ultimately a quiet title dispute. And if you had brought the suit, you might have been subject to Latches, but they brought the suit and they want to essentially say, you know, we have competing claims and theirs should be barred by Latches, but they're the plaintiff. Well, it cannot be that Latches applies in this scenario, because what the Nevada Supreme Court has said with respect to HOA foreclosure sales is that an HOA foreclosure sale can extinguish a first deed of trust, but it doesn't necessarily extinguish a first deed of trust. And that in order for a quiet title claim to become ripe, per se, an adverse party has to press the claim and pressing the, and that's the Thunder Properties case that cited in the briefs. And the first time that any party pressed a claim in this case was when SFR sued Wells Fargo. There was never any indication prior to then that any party was asserting that the foreclosure, the HOA foreclosure was a super priority sale. I'll also just point out that SFR alleged in the underlying action that Wells Fargo was barred by the statute of limitations from defending itself. It did not appeal that issue here before the court. And so I would say that the court would need to find exceptionally strong circumstances to find that Latches applies here absent a statute of limitations issue. I mean, this may be beyond our ken, but I just want to make sure I understand the whole process. If we were to just hypothetically arguendo, if we were to affirm the district court's judgment, what would then happen in terms of the actual mechanics with respect to this property? SFR is the owner of the property by virtue of the HOA foreclosure sale. And there is still Wells Fargo's deed of trust that is unsatisfied, that attaches to the property. So unless some party satisfies the deed of trust, then most likely Wells Fargo will foreclose on the amounts. And it would take possession of the property. Potentially. It could be a third party bidder in some cases. In other cases, SFR has purchased the property. So it just depends. All right. Any other questions, your honors? Thank you for your time. Thank you, counsel. We'll hear rebuttal. This isn't relevant to the argument, your honor, but just so you have answered your question, SFR did purchase it. The bank has already foreclosed. They foreclosed why this case was pending. Rather than move for an injunction because of the cost of that, SFR went ahead and purchased it at the bank foreclosure sale. So to answer your question, if this was remanded, we would, if you reverse, we would ask for reimbursement of paying for that property a second time. In another foreclosure sale. So you've already satisfied their deed of trust? Yes. Yes, your honor. Yes. Yes, we have. Kind of a belts and suspenders kind of outline. I just want to highlight that really everything that Ms. Winslow said concedes the argument when you look at the law. Again, the definition of the, where we measure the nine months super priority is the institution of an action to enforce the lien. The only lien that is enforceable is the unpaid periodic assessments. You cannot foreclose on fines only. So the case law says that that has to be the January 5th, 2009. But again, I've argued it again too. Even if you look at the 2007 lien is that action instituted the action, which it can't be, but let's argue for the sake of argument. It does. We have created an issue of fact. There is an HOA ledger that shows on June 1st, 2007, $132 of periodic assessment was due, period. And here, this was a summary judgment. So we created the issue of fact. If there's missing ledgers between 2007 and 2012, then that goes to, we have to have an issue of fact or open discovery to get those, that information. But it's not, we just ignore the ledger because the district court doesn't square that. It doesn't say, well, this fact overcomes it. She doesn't cover that at all. She just straight up ignores it and says, well, I'm not going to bother with it. But that's what you have to see. It existed. My time has run out, your honor. So I will end with that. All right. Thank you, counsel. The case just argued will be submitted. And with that, this court for this session stands adjourned.
judges: COLLINS, JOHNSTONE, ALBA